UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

FREDRICKA WRIGHT                          CASE NO. 3:19-CV-00057

VERSUS                                    JUDGE TERRY A. DOUGHTY

UNITED PARCEL SERVICE, INC.               MAG. JUDGE KAREN L. HAYES
(OHIO)

<u>**RULING ON MOTION FOR SUMMARY JUDGMENT**</u>

On January 16, 2019, Plaintiff Fredricka Wright ("Wright") filed a Complaint against her

former employer, Defendant United Parcel Service, Inc. (Ohio) ("UPS"), alleging age and sex

discrimination and hostile work environment claims. Pending here is UPS's Motion for

Summary Judgment seeking dismissal of all of Wright's claims [Doc. No. 81]. Wright has filed

an opposition [Doc. No. 92]. UPS has filed a reply to the opposition [Doc. No. 101].

For the following reasons, UPS's Motion for Summary Judgment is GRANTED and

Wright's claims are DISMISSED WITH PREJUDICE.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Wright, a female born in March of 1977, interviewed with UPS for a part-time unloader

position in August of 2017. Wright asserts that on August 17, 2017, she became an official UPS

employee and she attended two days of training for 4-5 hours. She further asserts that she

completed some computer modules and the building walk through training prior to her first date

of physical training on August 22, 2017.  UPS terminated Wright's employment on October 6, 2017.[1]

On March 1, 2018, Wright filed charges of sex and age discrimination and hostile work environment with the U.S. Equal Employment Opportunities Commission ("EEOC").   On October 18, 2018, she received her Right to Sue Notice.  This lawsuit followed.

In her Complaint, Wright alleged that although UPS customarily starts new employees in unloading and then moves them to loading, UPS kept her in unloading, where she was forced to unload boxes back to back by herself for several hours.  [Doc. No. 1, p. 1].  She complained to her supervisors about being kept in unloading past ten days, and that older and younger men were allowed to do light, physical duty work.  [*Id.*]  Wright further alleged that UPS failed to give any consideration to her age and physical condition. [*Id.*, p.2].

Wright additionally alleged that one of her supervisors told other employees that she begged for a job to support her three girls and that he did not want women working at UPS. [*Id.*].  He also allegedly told a male employee that he better not catch the male employee helping Wright unload boxes. [*Id.*]  She alleges her supervisors assigned her physically demanding work in the hope that she would voluntarily resign. [*Id.*].  Finally, she alleges she was terminated two days after being switched to loading. [*Id.*, p.3]

UPS contends in its motion for summary judgment that Wright no longer works at UPS due to unsatisfactory performance evident during her 30-working day probationary period.  UPS seeks judgment dismissing Wright's discharge-related claims because there is no competent

---

[1] The parties disagree as to whether Wright was terminated during her 30-day probationary period, or after she had completed it.  UPS contends she was terminated during the probationary period.  Wright contends she had completed her probationary period before being terminated.  The Court finds that the relevant issue is not whether she was actually within her probationary period, but instead, "whether the decision was made with discriminatory motive."  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

summary judgment evidence that her discharge was in any way related to her age (then 40) or sex. As for her hostile work environment claim, UPS asserts it is entitled to summary judgment because the behavior of which she complains does not rise to the level of hostile work environment as a matter of law.

Wright responds that she has not had an adequate opportunity to complete discovery, that there is direct evidence of gender-based discrimination, that she can establish a *prima facie* case of discrimination based upon sex and age, that UPS cannot articulate a non-discriminatory reason for firing her, and that there is sufficient evidence to establish her claim for a hostile work environment.

The motion is fully briefed and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.

*Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

**B.     Analysis**

**1.     Wright's claim of inadequate opportunity to complete discovery**

Wright first contends that she has been denied the right to have an adequate opportunity to depose Marques Hendrix and Ervin Wright, and that she has been denied full access to her UPS employment records.

Wright's contentions in this regard have been thoroughly litigated in various motions in this Court. [Doc. Nos. 18, 22, 28, 29, 47, 52, 64, 66, 74, 87]. Additionally, to the extent that Wright seeks a delay under Federal Rule of Civil Procedure 56(d), she has failed to comply with its provisions.

Wright further asserts that she is concerned the Court did not have adequate opportunity to consider her Reply Memo in Support of her Appeal of the Magistrate Judge's Order Denying her Motion to Compel the Disclosures and Depositions of Marques Hendrix and Ervin Young, and attached exhibits [Doc. No. 86]

A magistrate judge's non-dispositive pretrial order is reviewable under the clearly erroneous and contrary to law standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Wright filed her appeal on January 16, 2020 [Doc. No. 66]. UPS filed its response on February 7, 2020 [Doc. No. 85]. Wright filed her reply and exhibits electronically into the record on February 13, 2020 [Doc. No. 86]. Therefore, the Court had ample time and opportunity to consider the merits of Wright's arguments as well as all of her filings before issuing its Memorandum Order denying her appeal on February 14, 2020 [Doc. No. 87].

Therefore, Wright's claims have no merit. The Court will now consider UPS's arguments in support of its motion for summary judgment.

## 2. Wright's claims of sex and age discrimination

### a. Sex discrimination standard

Title VII prohibits employment discrimination against "any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she was the subject of an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); s*ee also Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5ᵗʰ Cir. 2009).*

If a plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or that the plaintiff's protected status was another motivating factor for the decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision. *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.").

### b.     Age discrimination standard

Under the Age Discrimination Employment Act ("ADEA"), an employer cannot "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308–09 (5th Cir. 2004). To establish an ADEA claim, the plaintiff must show that his age was the "but-for" cause of his termination—proving that age was a "motivating factor" for the decision is not enough. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (holding that a "plaintiff must prove by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision"); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases." (citing *Gross*, 557 U.S.

at 173–78)). A plaintiff may prove that age was a but-for cause of his firing with direct or indirect evidence. *Kilgore v. Brookeland Indep. Sch. Dist.*, 538 F. App'x 473, 475–76 (5th Cir. 2013) (per curiam) (unpublished); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

"Direct evidence of discrimination ... prove[s] the existence of a fact ... without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge. *See Moss*, 610 F.3d at 929.

If the plaintiff cannot prove his case with direct evidence of discriminatory motive, he can still rely on indirect evidence. When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988).

### c. Direct Evidence of Discrimination

UPS contends Wright has no direct evidence of sex or age discrimination. Wright, on the other hand, contends there is, at the least, direct evidence of sex discrimination. During Wright's employment at UPS, Edward Small ("Small") was her immediate supervisor and Tyler Burns ("Burns") was the overall supervisor. Wright asserts that Small and Burns had a discriminatory attitude against women. In support of that assertion, Wright claims that other non-supervisory employees allegedly told her that Small stated (outside her presence) that after her discharge, she begged for her job back; that Small allegedly told another non-supervisory employee "not to let [Burns] catch him helping [Wright] unload trucks;" and that other non-supervisory employees

told her that Small and Burns told them (again, outside her presence) that "they didn't want any women working at UPS." [Wright's Deposition, Doc. No. 92-2, at pp. 67, 68, 69, 70, 74]

Wright also alleges that Hawan Johnson, another female employed at UPS during Wright's employment, has made claims that she was subjected to repeated bullying and gender-based harassment.

The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *See Portis*, 34 F.3d at 328 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Id*. at 329. A statement or document which shows "on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).

The Court finds that these hearsay comments are insufficient to establish direct evidence of discrimination. Wright herself admits that nobody made any comments to her about her age or sex. [Wright's Deposition, Doc. No. 81-3, at pp 103, 104] (Burns never made any comment about her age); [*Id*., pp. 102, 103] (Neither Burns nor Small made any comments to her about her sex); [*Id*., pp. 104, 105] (Other than allegedly asking her age in a "small talk" conversation, Small never made any comment about her age). Further she produced no affidavit evidence or depositional testimony from employees to whom these statements were allegedly made. Therefore, they are inadmissible hearsay.

Moreover, the comments are not direct evidence because they are stray remarks. *See Harris v. Drax Biomass*, No. 3:18-CV-00709, 2019 WL 6339906, at *4-5, (W.D. La. 11/26/19) (To be considered evidence of discrimination, the remark must (1) relate to the plaintiff's

protected status, (2) be proximate in time to the employment decision at issue, (3) have been made by an individual with authority over the employment decision, and (4) be related to the specific employment decision challenged).

As evident, the first two alleged comments have nothing to do with Wright's age or sex. The third alleged comment is not in regard to Wright at all, and beyond this, is inadmissible hearsay. FED. R. EVID.801(c). Statements not related to the plaintiff are not direct evidence of discrimination, nor are statements unconnected to the plaintiff's termination. *Drake v. Magnolia Mgmt. Corp.,* 265 F.3d 1059, 1059 (5th Cir. 2001). Moreover, remarks suggesting bias without further evidence of age or gender animus are insufficient to defeat summary judgment on a circumstantial evidence case. *Id*

The Court therefore finds Wright has failed to present any direct evidence of sex or age discrimination.  However, the inquiry does not end there.

### d. Indirect Evidence of Discrimination

As stated above, if the plaintiff cannot prove his case with direct evidence of discriminatory motive, he can still rely on indirect evidence. When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas*.  Under the *McDonnell Douglas* burden shifting method of proof, a plaintiff's initial burden is to establish a prima facie case of age or sex discrimination. To meet this burden, a plaintiff must show (1) she belongs to a protected class, (2) she was qualified for the position at issue, (3) the employer took an adverse employment action against her, and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class, under nearly identical circumstances. *McDonnell Douglas*.

UPS admits Wright—a female who was age 40 when hired in August 2017 and when discharged in October 2017—was within the protected class. UPS also admits it took an adverse employment action against her when she was discharged on October 6, 2017. However, UPS disputes the second and fourth factors. The Court will discuss each in turn.

### i.      Wright was not Qualified for the Position

UPS first asserts that Wright was not qualified for her position. The unloader position requires an employee to be able to lift 70 pounds, as the job position essentially is to unload trucks. [Unloader Essential Job Functions Doc. No. 81-11; see also Edward Small Deposition, Doc. No. 81-4, at p. 61] (explaining that everyone must be able to lift a certain amount of weight). If a package is over 70 pounds, then the employee should ask for help to lift it. [*Id*., p. 58]. Otherwise, the employee should be able to lift that package on his or her own. [*Id*.].

UPS contends that, within the first thirty working days of employment, Small observed that "her flow rate was down" and "[s]he wasn't meeting the package count." [*Id*. at 40-41, 47, 59]. When this occurs, the entire preloading operation is delayed, and it can even delay the package car drivers from leaving the facility to start their deliveries. [*Id*. at 44, 45] UPS asserts that, in view of Wright's performance issues evident only weeks into her employment, Wright is unable to demonstrate that she was qualified for the position at the time of her discharge.

Wright responds that Small testified that Wright was qualified for the position. [Id., p. 46]. Wright contends she worked hard, and she did not complain about doing the physical work. Wright contends further that she had previously worked for UPS during the 2016 Peak Season and that she was deemed eligible for rehire. [Wright Deposition, Doc. No. 92-2, p. 21].

The Court finds that Wright has met her minimal burden of showing she was qualified for the position. UPS has not produced evidence that she was not qualified for the position, just that she was not doing it fast enough.

Having found that Wright was qualified for the position, the Court will next consider UPS's contention that Wright has failed to satisfy the fourth factor.

> **ii.     Wright was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class, under nearly identical circumstances.**

To satisfy this fourth element of the *prima facie* case, a plaintiff must show (a) she was replaced by someone outside her protected class, or, (b) she was treated less favorably than other similarly situated employees outside her class, under nearly identical circumstances. *McDonnell Douglas*.

UPS first asserts that Wright is unable to show that she was replaced by someone outside her protected class. [Wright Deposition, Doc. No. 81-3, at p. 105] (admitting she does not know who replaced her position).

Wright responds that she was replaced by a younger male, Brandon Dorsey ("Dorsey"), born August 27, 1986. [Burns Deposition, Doc. No. 81-5, at p. 35-36]. However, UPS replies that Wright misstates the summary judgment record because Burns' actual testimony is that Dorsey is a current employee in unloading (at the time of Burns' November 20, 2019 deposition), not that he replaced Wright after her discharge more than two years earlier. [*Id*. at p. 35]. Moreover, Burns testified he did not know Dorsey's age. [*Id*].

The Court finds that Wright has failed to create a genuine issue of material fact that she was replaced by a younger male. However, Wright could also satisfy her burden by showing she

was treated less favorably than other similarly situated employees outside her class, under nearly identical circumstances

To establish disparate treatment, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 260. Accordingly, the misconduct for which the plaintiff was discharged must be nearly identical to that engaged in by other employees. *Id.*; *see also Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, No. 17-20536, 2018 WL 3814732 at *4 (5th Cir. Aug. 9, 2018). Furthermore, the employees being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260.

UPS contends that Wright has no evidence that any other part-time unloader had the same performance issues that she had within the 30-working day probationary period. Wright responds that there has never been a female hired as an unloader for the past five years. [Wright Deposition, Doc. No. 92-2, at pp. 40, 41]. As such, Wright asserts that she does not have to point to comparators that were similarly situated outside of her protected class. Additionally, Wright alleges that "Anthony" and "Rock," two males, were given lighter work duties to perform. "Ashley," an older male, was assigned lighter work duties as well. Wright had the same supervisor as Anthony and Rock, and they worked in the same Pre-Load area. (*Id.*, at pp. 64, 65]

UPS replies that Wright has not alleged that any of these employees were within their probationary periods, like Wright, nor does she know whether any of these individuals have any physical restrictions—much less what their actual job assignment was. UPS cites *Thomas v. Johnson*, 788 F.3d 177, 180 (5th Cir. 2015) (holding as a matter of law, probationary employees and permanent employees are not similarly situated); see also *id.* at p. 65 (Wright has no

knowledge as to whether Anthony, Rock, or Ashley have any physical restrictions). In sum, UPS contends that Wright has no evidence that any other part-time unloader had the same performance issues that she had within the 30-working day probationary period and was not similarly discharged. UPS concludes that Wright has failed to produce any evidence of disparate treatment, and so has failed to meet her *prima facie* case.

The Court finds that, regardless of whether the other workers were terminated during their probationary period, the only summary evidence offered by Wright with regard to the other workers is her own unsupported deposition testimony. She testified she has no knowledge as to whether any of these other workers had any physical restrictions. The Court finds that Wright has not produced sufficient summary judgment evidence of disparate treatment to create a genuine issue of material fact.

However, assuming *arguendo* that Wright has established a *prima facie* case of sex and age discrimination, the Court will next consider whether UPS has produced legitimate, nondiscriminatory reasons for the adverse-employment action, and, if so, whether Wright has carried her burden of showing either that the proffered reason was a pretext for discrimination, or that Wright's protected status was another motivating factor for the decision.

   e. **Legitimate, nondiscriminatory reason for adverse action; and pretext**

UPS argues in its memorandum in support of its motion that it has satisfied its burden of production by articulating a legitimate, non-discriminatory reason for Wright's discharge – her unsatisfactory performance, citing *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 657 (5th Cir. 2012). As indicated above, within the first thirty working days of employment, Small observed that "her flow rate was down" and "[s]he wasn't meeting the package count." [Small Deposition, Doc. No. 81-4. at 40-41, 47, 59]. When this occurs, the entire preloading operation is

delayed, and it can even delay the package car drivers from leaving the facility to start their deliveries. [*Id*. at 44, 45] UPS argues that the evidence is clear and undisputed that while within her 30-working day probationary period, she demonstrated unsatisfactory performance and was discharged. [Burns Deposition, Doc. No. 81-5, at p. 91] [Wright Deposition, Doc. Nos. 81-3 and 92-2, at p. 84].

The Court finds that UPS has clearly *articulated* a legitimate, non-discriminatory reason for Wright's discharge, that being her alleged unsatisfactory job performance.[2]

Therefore, any "inference of discrimination disappears." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Further, at this point, Wright bears the ultimate burden to show UPS's reason for discharging her is pretext for age and sex discrimination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). To do so, Wright must "show something beyond disagreement with the employer's decision." *Wilson v. New Wendy's, Inc.,* No. 3:18-CV-01049, 2019 WL 6247823, at *4, 6 (W.D. La. 11/20/19) (*citing Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005)).

A plaintiff can establish pretext by either evidence of disparate treatment or by showing "the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). When the *Thomas* plaintiff argued there was a factual dispute as to whether the plaintiff actually did what the employer alleged, the Fifth Circuit held, "[t]his argument is foreclosed." *Id*. Instead, to show pretext, the plaintiff "was required to show not only that the determination was wrong, but also that it was reached in bad faith." *Id*.

---

[2] Although Wright contends in her opposition that UPS did not have a legitimate, non-discriminatory reason for her termination, and although the word "pretext" does not appear in her argument, it is clear to the Court that she is not arguing that UPS did not *articulate* a legitimate, non-discriminatory reason for her termination; rather, she is arguing that the reason articulated by UPS is *pretext* for age and sex discrimination.

UPS argues that Wright can show neither of these requirements, and thus, is unable to show pretext. UPS states that employment discrimination laws were "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc.,* 610 F.3d 917, 926 (5th Cir. 2010).

UPS further contends that Wright never complained that she was being treated differently or discriminated against during her employment. [Small Deposition, Doc. No. 82-4, at p. 36]. During this probationary period, Wright expressed a concern to Small that she did not think women should be required to work in unload. [*Id*. at pp. 65, 66]. Small explained to her that everyone starts in unload and that everyone must be treated fairly. *Id*. After only ten days, she claims she started complaining to Small that she should not be in unloading and that she wanted to move to loading. [Wright Deposition, Doc. No. 92-2, at pp. 43, 44]. She also allegedly complained to Small and Burns about being in unloading and that she needed more training multiple times during her short employment. [*Id*. at pp. 45, 46, 53, 54, 56].

UPS further contends that Wright is unable to show that anyone at UPS acted in bad faith. She admits that nobody made any comments to her about her age or sex. [*Id*. at pp. 103, 104] (Burns never made any comment about her age); [*Id*. at pp. 102, 103] (Neither Burns nor Small made any comments to her about her sex); [*Id*. at pp. 104, 105] (Other than allegedly asking her age in a "small talk" conversation, Small never made any comment about her age). Therefore, according to UPS, Wright lacks any evidence that Burns, Small, McCarty, or any management employee, bore any *animus* against her because of her age or sex. Instead, UPS argues, the evidence is clear and undisputed that while within her 30-working day probationary period, she demonstrated unsatisfactory performance and was discharged. [Burns Deposition, Doc. No. 81-5, at p. 91] [Wright Deposition, Doc. No. 92-2, at p. 84].

UPS asserts that it even offered Wright the opportunity to return to work, but she was a no-call/no-show on her return date of October 31, 2017. [Burns Deposition, Doc. No. 81-5, at p. 106; Email, Doc. No. 81-17; Text Message Doc. No. 81-21]. UPS further asserts, excluding Wright, at least twenty-seven (27) newly hired Monroe preload employees from 2016 to 2018 were discharged within their 30-working day probationary period. [Declaration of Wilfred Edwards, UPS Human Resources Area Manager, Doc. No. 81.6 at ¶9]. Of these, seventeen were male and all were under age 40 when discharged. *Id.*

Wright responds that Small testified that Wright was qualified for the position. [Id., p. 46]. Further, Burns testified that Wright was a dedicated employee and that there was no formal discipline process for performance issues. [ Burns Deposition, Doc. No. 81-5, at pp 92, 94]. Wright asserts that she was not discharged for unsatisfactory performance, and that Small did not allege that Wright had performance issues until *after* she was terminated.

Wright contends that Small testified that he did not have any issues with Wright's performance. [Small Deposition, Doc. No. 81-4, p 40] He also testified that men did not keep up with the flow count, but that they were encouraged to do better. The men were not terminated as Wright was. [*Id.* at p. 44].

Wright contends further that she had previously worked for UPS during the 2016 Peak Season and that she was deemed eligible for rehire. Wright did not report any claims of discrimination during her employment as a peak seasonal employee. [Wright Deposition, Doc. No. 92-2, p. 21]. She asserts that Burns further testified that he did not have any issues with Wright's performance during peak season. [Burns Deposition, Doc. No. 81-5, p. 64]

Wright contends she worked hard, and she did not complain about doing the physical work. She states she complained because she knew that she was supposed to be trained on loading and

that she was intentionally being forced to remain in unloading because she was a 40-year old woman.

Wright asserts that, on October 6, 2017, Burns terminated her stating that he did not have time to properly train her. [Wright Deposition, Doc. No. 92-2, p. 90] Wright emailed Keith McCarty ("McCarty"), a higher supervisor, on October 6, 2017, advising that Burns told her that she was fired because he did not have time to train her, and she stated that he did not have a legitimate reason to fire her. Wright asserts Burns did not mention anything about her alleged performance issues when she was terminated. [Doc. No. 92, p. 9]

Citing only her own deposition testimony, Wright asserts that UPS had a customary practice of assigning new employees to unloading for a maximum of ten days [*Id*. at p. 43 -45]; Wright's co-workers made complaints about Wright's mistreatment [*Id*. at pp.49, 52, 53, 66].; Wright continued to take the discriminatory treatment from Small and Burns [*Id*. at p. 54]; Small made derogatory comments about Wright begging for her job and having to feed her children [*Id*. at p. 58]; he also made discriminatory comments about Wright's makeup and performance [*Id*. at pp. 97, 98]; Wright complained to McCarty about Small's derogatory comments and he stated that it was an attitude that no UPS employee should have, but nothing was done [*Id*. at p. 68]; Small did not want women working at the UPS facility, and he would intentionally assign heavy duties to women to force them to quit [*Id*. at pp. 69, 70, 71]; Wright's co-worker, Ervin Young ("Young"), assumed the role of a supervisor to train Wright on how to properly unload trucks but Small specifically told Ervin Young not to assist Wright [*Id*. at pp. 76, 77, 78]; and Burns started reducing the number of days that Wright reported to work after she began making complaints about mistreatment [*Id*. at p. 78].

Wright further contends her personnel records show that the alleged performance issues were not documented until October 27, 2017, which was 21 days after she had been terminated. She asserts that UPS realized an injustice had been done, and that UPS's attempt to offer her a temporary peak seasonal position with no benefits was a sham so that Wright would accept the demotion and be "legitimately" terminated in January 2018. According to Wright, if she was such a terrible, unqualified, lackluster employee, then there was no legitimate reason to rehire her again.

UPS replies that Wright misstates Small's testimony relating to her performance. In fact, Small testified:

> Q. Did you have an issue with Ms. Wright's job performance?
>
> A. I—I didn't have any issue with her job performance. No, ma'am.
>
> Q. Okay. Wha—Do you remember if –if she was a hard worker during the time you trained her?
>
> A. I think—I guess what you are asking me was she –was she performing the job or—
>
> Q. Yes.
>
> A. The package count was low.
>
> Q. Okay.
>
> A. The package count was low.
>
> Q. Okay. And do you remember why the package count was low?
>
> A. I wouldn't know.
>
> [Small Deposition, Doc. No. 81-4, at p. 40; see also *id*. at 60].

Small continued, "If you're not keeping up with your flow rate everything slows down." [Id. at 44]. Wright's "flow rate was down a lot. The flow rate was down and dealing with the bags, the RNC bags, at the end of the day...". [Id. at 47].

UPS states that some men also had issues keeping up the flow rate. However, Wright's allegation that Small testified that those "men were not terminated as Wright was" is simply incorrect. [See Doc. No. 92, at p.8]. Small actually testified:

> Q. Now when you have had men work in that same position would they be able to keep up with the flow rate better?
>
> A. No. It's a lot of them—it's a lot [of] men that do[n't] keep up with the flow rate.
>
> Q. Okay. And so as a trainer what would you do if the person was not able to keep up with the flow rate?
>
> A. Well, what am I to do—
>
> Q. Right.
>
> A. —if they're not keeping up?
>
> Q. How would you address that?
>
> A. I mean, I just –just try to encourage them because you have a time limit you have to have these trucks—
>
> Q. Okay. What was the time limit?
>
> A. –they['re] coming in. You have to have these—I mean, the time limit for drivers to come in. Everything has to be done.
>
> [Doc. 81-4, p. 44]

UPS asserts that, contrary to Wright's allegation that Small said the men are "encouraged," whereas Wright was discharged, as evident from Wright's citation above, the job as a trainer is to encourage everyone to keep up with the flow rate. Also, Small, as the part-time supervisor, did not discharge Wright (or anyone else); instead full-time supervisor Burns

discharged Wright for performance. UPS argues that, despite Wright's erroneous citation otherwise, there is simply no summary judgment evidence that men were encouraged whereas Wright was discharged.

UPS further argues that not only did Burns and Small testify about Wright's performance problems, Wright herself acknowledged that when he discharged her, Burns told her it was *"[d]ue to my performance*, due to he didn't have time to train me—he didn't have time to train me that was his first thing that he told me, his first response that he told me. *And due to my lack of performance....*" [Wright Deposition, Doc. Nos. 81-3 and 92-2, at p. 84] (emphasis added).

UPS argues that, notwithstanding her own self-serving and unsupported deposition testimony concerning the events related to her brief employment with UPS, there is no competent summary judgment evidence of pretext.

The Court finds that Wright has failed to carry her burden of establishing pretext by either evidence of disparate treatment or by showing the employer's proffered explanation is false or unworthy of credence. After considering the deposition testimony from the other witnesses in the full context of the testimony, the Court finds that testimony does not support Wright's arguments. As indicated above, the Court finds that Wright's allegations that no one complained about her job performance until days after her termination is belied by Wright's own testimony that, at the time of her termination, she was told it was due to her lack of performance.

Wright has failed to establish bad faith on the part of UPS for offering her the temporary position, because, despite her performance issues related to a permanent job, it is certainly plausible that she could still have been considered for the temporary peak seasonal position, a position she had held before.

While Wright complained that she wanted to move to loading and that she wanted more training, she has not refuted UPS's contention that she never complained that she was being treated differently or discriminated against during her employment.

Additionally, Wright does not address UPS's probationary termination statistics that, other than Wright, seventeen out of the twenty-seven newly-hired Monroe Center employees from 2016 to 2018 who were discharged during their probationary period were male—and all were under age 40.

In summary, Wright only submits her own subjective belief that she was discharged because of her age and sex. Such beliefs, however, are not sufficient to carry her ultimate burden to prove unlawful discrimination. *See Dees v. United Rentals N. Am., Inc.,* 505 F. App'x 302, 306 (5th Cir. 2013) ("[Plaintiff's] subjective belief that [the Defendant] discriminated against him is clearly insufficient to demonstrate pretext."). Consequently, summary judgment and dismissal of Wright's age and sex discrimination claims in their entirety is warranted.

### 3. Wright's claim of hostile work environment

Wright alleges that she was subjected to a hostile work environment by remaining in the unloader position longer than ten days and by the isolated comments that Burns and Small allegedly made to other employees.

In order to make out a *prima facie* case of hostile work environment, Wright must demonstrate that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of her employment; and (5) UPS knew or should have known of the alleged harassment and failed to take prompt remedial action. *Brooks v. Firestone Polymers, L.L.C.,* 640 F. App'x 393, 399 (5th Cir. 2016). Failure to prove any of these essential

elements is fatal to her claim. *Anderson v. YRC, Inc.*, 742 F. App'x 27 (5th Cir. 2018) (Mem. Op.).

With regard to the fifth factor, under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Vance v. Ball State University*, 570 U.S. 421, 424 (2013).

"Title VII does not reach 'conduct that is merely offensive'—it proscribes only an environment that a reasonable person would find hostile or abusive." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 839 (5th Cir. 2015 (citation omitted). As confirmed repeatedly by the Fifth Circuit, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [actionable discrimination]." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *accord Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *accord Hockman v. Westward Comm'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

Wright's work environment must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez v. Yellow Transp., Inc.*,670 F.3d 644 (5th Cir. 2012)

To determine whether a workplace is a hostile work environment, courts must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88. Conduct that is neither severe nor pervasive cannot support a sexual harassment claim. *Stewart v. Mississippi Transp. Com'n,* 586 F.3d 321, 331 (5th Cir. 2009). The "severe and pervasive" standard is purposefully high—it is meant to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788.

Additionally, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 F. App'x 229, 235 (5th Cir. 2015). To be pervasive, "there must have been a 'steady barrage' of such comments." *Mills v. City of Shreveport*, No. 5:17-1088, 2019 WL 4463322, at *7 (W.D. La. 9/17/19) (citation omitted).

UPS does not dispute that Wright was a 40-year old female from the beginning of her employment in August 2017 to her October 6, 2017 discharge. UPS denies, however, that Wright can meet her prima facie burden as to the remaining requirements. UPS more specifically contends that Wright is unable to show that any of her allegations meet either prong of the "severe and pervasive" standard.

a. **Keeping Wright in the Unloading position longer than ten days**

UPS asserts that the Monroe facility typically keeps its probationary employees in the same position for the first 30-working days of employment. [Edwards Declaration, Doc. No. 81-6, ¶12]. In preload, this is usually the unloader position that Wright had. *Id*. UPS contends

Wright has no evidence to support her argument that keeping her in unloading more than ten days subjects her to a hostile work environment. Instead, the evidence demonstrates that Wright was treated like other employees, and in any event, although Wright may prefer the loader position to the unloader position, they are comparable positions with similar essential job functions and the same pay. [Id. at ¶12; Burns Deposition, Doc. No. 81-5, at pp. 37, 38, 39; Wright Deposition, Doc. No. 92-2, at p. 86; McCarty Deposition, Doc. No. 81-10, at pp 108-110].

UPS further states that Wright herself testified that her understanding is everyone starts in unloading, and that an employee must start in "unloading first to get to loading." [Wright Deposition, Doc. No. 92-2, at p. 31]. Accordingly, such a claim does not meet the Title VII standard for a hostile work environment.

Wright responds that the unloading position is more physically demanding than the loading position and that UPS altered the terms of her employment when Small and Burns intentionally kept her in unloading for almost the entirety of her employment in an effort to force her out. Wright states that she was reassigned to loading two days before she was fired. She further states that Jamian Green, one of Wright's Part Time Supervisors, specifically told her that she should have been moved to loading much sooner. He had never seen anyone remain in unloading for that long. [Wright Deposition, Doc. No. 92-2, at pp. 41, 42]. She states that Burns testified that Kenyada Cockerham was able to start working in loading during her probationary period, which establishes that everyone does not start in unloading. (Burns Deposition, Doc. No. 81-5, at p. 43]. Wright further asserts that she made multiple complaints about being in unloading, so UPS knew or should have known about this alleged harassment.

UPS replies that, as to Wright's allegation that another female UPS employee, Kenyada Crockerham started her employment in loading, as opposed to unloading like Wright, such does not evidence a hostile work environment. First, Crockerham is female, and thus, within Wright's protected class. Second, Burns explained why Crockerham started in loading, because she started during a period of high volume in which many employees were going into driving, so the volume levels were equivalent to a seasonal period. [Burns Deposition, Doc. No. 81-5, p. 41] (explaining why Crockerham started in loading); [see also Edwards Declaration, Doc. No. 81-6, ¶ 10] (explaining that usually new preload employees start in the unload area, but this is dependent upon the "needs of the company").

The Court finds that Wright's allegation that keeping her in unloading more than ten days fails to meet the "severe or pervasive" standard of a hostile work environment claim, nor does it describe an environment that a reasonable person would find "hostile or abusive." Although Wright may have preferred the loader position to the unloader position, she has not produced any evidence of a hostile work environment in that regard. Further, her argument that she was kept in unloading "to force her out" is based only on speculation. The alleged statement by Jamian Green is unsubstantiated hearsay. "[T]he evidence proffered by the plaintiff to satisfy his burden of proof [at summary judgment] must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (*citing Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir.1987)). Additionally, Wright fails to establish any differences in treatment based on sex; as Crockerham was a female. Accordingly, summary judgment is warranted as to this claim.

### b. Isolated comments by Burns and Small

UPS contends that it is entitled to summary judgment dismissing Wright's claims of hostile work environment based on alleged comments by Burns and Small because they were isolated comments.

As noted previously, Wright asserts that Small, her immediate supervisor, made derogatory comments to someone else, outside of her presence, about Wright begging for her job and having to feed her children. [Wright Deposition, Doc. No. 92-2, at p. 58]. She asserts he also made discriminatory comments about Wright's makeup and performance. [*Id*., pp. 97, 98]. Wright contends that she was subjected to an atmosphere permeated with discriminatory comments and ridicule just as Hawan Johnson ("Johnson") was. She attaches as a sealed exhibit certain Johnson documents. [Doc. No. 97]

Wright argues that there is a Ninth Circuit case that is analogous to the present case entitled *Matson v. United Parcel Service, Inc*., 840 F.3d 1126 (9th Cir. 1026).  Wright asserts the plaintiff in *Matson* made similar allegations to hers and was allowed to go to trial.  Specifically, the plaintiff alleged that a supervisor and other employees refused to help her lift a 150-pound package and laughed as she struggled to do it alone.  There were other UPS managers who disregarded her complaints of workplace hostility and threatened to file charges against her.

UPS replies that the *Matson* case is not persuasive because it is a Ninth Circuit opinion addressing Washington state claims for hostile work environment, not Title VII. Furthermore, the plaintiff's allegations in that case were entirely different than Wright's, as evident in the summary judgment briefing, 840 F.3d at 1130.

UPS further contends that the Hawan Johnson documents filed under seal [Doc. No. 97] are rife with hearsay within hearsay. UPS cites FED. R. EVID.801-805, and *Autry v. Fort Bend*

*Indep. Sch. Dist.*, 704 F.3d 344, 348 (5th Cir. 2013) (rejecting attempt to proffer evidence because it "relies on hearsay and is plainly contradicted by the competent summary judgment evidence"). UPS asserts, beyond this, they are not properly authenticated under Federal Rule of Evidence 901, because there is no business record or other authentication, other than Johnson's attorney claiming they have been within his file. UPS contends this does not constitute proper authentication. See FED. R. EVID. 901. UPS urges, accordingly, they should be disregarded.

Even if considered by the Court, UPS contends they do not constitute evidence of Wright's claims of supervisor harassment and discrimination. Johnson claimed a co-worker bullied her, unlike Wright who alleges her immediate supervisor Small and her second-level supervisor Burns harassed her. (Johnson's allegations involved a co-worker, Johnson was not discharged or disciplined, and Johnson had gained seniority under the CBA);[Johnson Deposition Excerpts, Doc. No. 101-1, at pp. 11, 27, 36] (testifying she never heard Small or Burns make any derogatory comment about women and that the alleged harasser was not a supervisor). Thus, Johnson cannot be considered "similarly situated" to Wright because her employment status, discipline, and allegations are completely different than that of Wright. *See Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.,* 745 F. App'x 209, 213-14 (5th Cir. 2018) (requiring comparators to be similarly situated in time periods and positions); *see also Thomas v. Johnson,* 788 F.3d 177, 180 (5th Cir. 2015) (holding as a matter of law, probationary employees and permanent employees are not similarly situated.

Even if the Court were to assume *arguendo* that the Johnson documents are admissible, and assuming *arguendo* that Small and Burns made the comments alleged by Wright, the Court nevertheless finds that Wright has not presented facts which are sufficient to support a harassment claim. The Fifth Circuit has repeatedly found that "boorish" or offensive comments

do not amount to "severe or pervasive" harassment, particularly when they are infrequent and unaccompanied by physical touching. *See Gibson v. Potter*, 264 F. App'x 397, 399-401 (5th Cir. 2008) (affirming summary judgment in the employer's favor where, over a four-month period, a supervisor occasionally "engag[ed] in 'sex talk', ask[ed] for dates, and offer[ed] his telephone number" to the plaintiff, and, on one occasion, "grabb[ed] [the plaintiff's] buttocks").

Additionally, in *Higgins v. Lufkin Industries, Inc*., for instance, the Fifth Circuit considered the plaintiff's claim that a coworker had called her a "[racial expletive] bitch" and a "whore" and "quoted sexually suggestive hip-hop lyrics," and then, a few months later, told her that he would "write her up" for a disciplinary infraction unless she "gave him some." *Higgins*, 633 F. App'x at 230. The Court held that these "two occasions" of inappropriate conduct were not severe or pervasive within the meaning of Title VII. *Id*. at 235; *see also Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) ("'[T]he mere utterance of an . . . epithet which engenders offensive feelings in an employee[ ] does not sufficiently affect the conditions of employment to implicate Title VII.").

The isolated comments attributed to Burns and Small simply do not amount to actionable harassment under Title VII. Consequently, Wright cannot sustain a hostile work environment claim on this basis.

## III.    CONCLUSION

For the foregoing reasons, UPS's Motion for Summary Judgment [Doc. No. 81] is GRANTED.  Wright's claims are DISMISSED WITH PREJUDICE in their entirety.  All pending motions are DENIED AS MOOT.

MONROE, LOUISIANA, this 27th day of March, 2020.

                                                **TERRY A. DOUGHTY**
                                  **UNITED STATES DISTRICT JUDGE**